**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NEW ZION CHRISTIAN FELLOWSHIP

        Plaintiff,

        v.

SENECA SPECIALTY INSURANCE
COMPANY

        Defendant.

Case No.

*Jury Demand Endorsed herein*

## <u>Complaint</u>

Plaintiff, New Zion Christian Fellowship, by and through its attorney of record, Benjamin P. Barmore, files this Complaint against the Defendant Seneca Casualty Insurance Company ("Defendant"). In support of all such claims and causes of action, Plaintiff would respectfully show as follows:

### *Nature of Action*

1. This diversity action arises from the Defendant's failure to provide insurance benefits and its bad faith efforts to evade liability under its policies of insurance.

### *Jurisdictional Allegations*

2. At all times material, the Plaintiff, NEW ZION CHRISTIAN FELLOWSHIP CHURCH was an Illinois not-for-profit corporation with its principal place of business located at 14200 Doctor M.L.K. Jr Dr, Dolton, IL 60419. The Plaintiff is a congregation of the Evangelical Covenant Church. The Plaintiff's Church is located on the southern end of a larger two-story shopping-center on the corner of 142nd Street and Doctor M.L.K. Jr. Drive ("Insured Premises").

1

3.      At   all   times   material, the Defendant, SENECA SPECIALTY INSURANCE COMPANY was a Delaware insurance corporation with its principal place of business at 160 Water Street, New York, NY 10038. 1209 Orange Street, Wilmington, DE 19801.

4.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship between the parties. Further, the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendant, pursuant to 732 ILCS 5/2-209, because Defendants are subject to general personal jurisdiction in the State of Illinois, and this action arises from Defendant's transaction of business in Illinois and acts that occurred in Illinois.

6.      This Court has personal jurisdiction over the Plaintiff in this matter as Plaintiff is situated in Cook County, Illinois and a substantial number of the allegations detailed in this Complaint at Law are in regard to the Insured Premises located at Cook County, Illinois 60419.

7.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391 (b)(2), because a substantial part of the events and/or omissions giving rise to the claims occurred in this district.

## Count I
## (BREACH OF CONTRACT)

8.      The Defendant offers a wide variety of commercial insurance products, including property and casualty insurance policies in the State of Illinois, including Cook County. The Defendant's local address in Chicago is 1 South Wacker Drive, Suite 1350, Chicago, IL 60606.

9.      The Defendant issued an insurance policy to the Plaintiff, bearing policy number SSP 1404424. The policy was for a term of one year i.e., from 8/31/2019 to 8/31/2020, and in accordance with its terms, the Defendant had agreed to provide coverage, subject to the payment of the requisite premium amounts.

10. This coverage basically insures against risk of direct physical loss to the Insured Premises unless the loss is limited or excluded. Losses caused by strong winds are not excluded under the terms and conditions of the insurance policy and, as such, is a covered risk of loss.

11. On or about July 9, 2020, the Insured Premises sustained severe damage due to strong winds ("**Weather-Related Event**"). On July 12, 2020, New Zion Covenant contacted its insurance broker, Clyde Patterson, to raise a claim pursuant to the damage caused as a result of the Weather-Related Event. New Zion Covenant was advised by its insurance broker to contact a restoration company. Paul Davis Restoration ("**PDR**") responded to our client's request with emergency mitigation services. PDR tried to stabilize the building and provided water and mold mitigation services.

12. Meanwhile, on July 14, 2020, the Plaintiff, through its insurance broker, notified the Defendant of the loss that had occurred and submitted a property loss notice in accordance with the terms of the insurance policy. The claim raised bears claim number 20GGN124 (A copy of the notice is attached herein as Exhibit I). In response, the Defendant sent the Plaintiff a letter on July 15, 2020, acknowledging the receipt of the same and informed the Plaintiff that an independent adjuster from American Claims Services ("**ACS**") would set up an appointment to inspect the loss (A copy of this letter is attached herein as Exhibit II).

13. Subsequently, on August 4, 2020, Paul Karnezis from ACS, reached out to the Plaintiff and informed Plaintiff that it needed to provide Defendant with a list of items the church owned, that were damaged or destroyed because of the incident on July 9, 2020. Mr. Karnezis provided the Plaintiff with a form and asked them to complete the documentation of any additional Business Personal Property ("**BPP**") that is being claimed as damaged or destroyed.

14.     However, given the large number of rooms and items that were damaged, it became challenging to effectively determine exactly how much of the damage to the contents had been caused as a result of damage caused by the Weather-Related Event. As such, the Plaintiff, via email dated August 17, 2020, informed Mr. Karnezis that Plaintiff were willing to settle for 85% of the maximum coverage provided for the loss of BPP (See a copy of the email attached herein as Exhibit III).

15.     Subsequently, on August 8, 2020, an investigation of the Insured Premises was conducted by ACS. It retained the services of Engineering Systems Inc. ("**ESi**"), who were tasked with providing an engineering investigative report. ESi conducted an examination of the Insured Premises on July 24, 2020, and submitted a report of its findings on August 12, 2020 (attached herein as Exhibit IV).

16.     Finally, on August 20, 2020, the Defendant sent a letter (attached herein as Exhibit V) informing the Plaintiff that Mr. Karnezis' initial findings, when taken in conjunction with an earlier report provided by the Plaintiff, revealed that the issues to the roof was caused by age and poor workmanship. The Defendant then proceeded to highlight certain provisions set forth in Cause of Loss -Special Form (CP 10 30 09 17) that excluded its liability.

17.     According to one such provision that was cited, the Defendant stated that it would not be liable if damage was caused due to prior poor construction and workmanship. The Defendant concluded by reserving all of its rights in the matter confirming that the matter was still open for investigation. The Defendant reiterated this statement in a second letter to the Plaintiff on September 25, 2020.

18.     There the matter stood until October 16, 2020, when PDR submitted an invoice for the services performed up to that date. As no monies had been received from the Defendant, the

Plaintiff was unable to make the required payment and further mitigative steps could not be taken. The void left by PDR was a direct result of the Defendant's refusal to pay any part of the claim. In addition, the roof continued to create challenges for the Plaintiff. Buckets, pumps and hoses were purchased and placed in strategic positions to collect leaking water inside the building. Ceiling tiles had fallen in various places throughout the building, including the sanctuary, narthex, banquet hall, and office space. The Plaintiff purchased antimicrobial treatment to spray down the facility to ensure that there was no mold spore growth and hired carpet cleaners to clean the carpeting and chairs in the sanctuary and banquet hall.

19.     The Plaintiff's tenants also experienced water intrusion in its retail units. The complaints by the tenants were taken seriously and the Plaintiff did everything possible to contain the water so that the units could be protected. Further, in preparation for church services, the Plaintiff rented scaffolding so that water damaged ceiling tiles could be removed from the sanctuary. The Plaintiff purchased over $2000 in ceiling tiles so that it could ensure a safe environment for worshippers when the Plaintiff reopened the church building in the beginning of October.

20.     However, it soon became obvious that the Defendant was interested in resolving the matter quickly. Towards the end of October, i.e., on or around October 22, 2020, the Defendant reached out requesting the submission of further documents and the fixing of a date for conducting an Examination Under Oath ("**EUO**"). However, by this time several of the Plaintiff's tenants were beginning to complain about the damage to the roof. The condition of the Insured Premises was deteriorating by the day, and it became obvious that emergency measures would need to be taken. The Plaintiff and its agents informed the Defendant that it needed to find a quick resolution to this

matter, as the delay was causing Plaintiff to incur further expense in a bid to provide temporary fixes and repairs.

21.     The Defendant, vide letter dated October 28, 2020, informed the Plaintiff that there were no unnecessary delays in this matter and that the claim was still under investigation. The Defendant further stated that it was waiting for the submission of additional documents and could not undertake any steps until such documentation was produced. The Defendant did at one point offer to execute a non-waiver agreement, when it became clear that the Plaintiff would need to make a few emergency repairs that would alter the existing condition of the roof for future inspections (See email dated October 27, 2020, attached herein as Exhibit VI). However, no such agreement was executed, and the matter continued to stall.

22.     Finally on December 22, 2020, the Defendant again informed our client that it was in the process of completing its investigation and formally requested the examination under oath of Leslie Morrow and Doreen Reed. As the present and former church administrator respectively, both individuals were extremely well versed with the details of claim. The Defendant also requested that certain documents be produced by our client.  Examinations Under Oath of Leslie Morrow and Dorean Reed occurred on January 27, 2021.

23.     On or around February 10, 2021, further enquiries were made to determine whether, since the EUO of the parties, any decision had been reached by the Defendant. However, when no satisfactory response was provided, the Plaintiff sent another letter dated March 15, 2021, desiring to know the reason for such excessive delay. In response, the Defendants sent a letter dated May 5, 2021, wherein it denied the existence of any such delay and instead assured the Plaintiff that Defendant were almost finished with the investigation into the claim. Defendant then alleged that

the Plaintiff had failed to provide certain documents despite repeated requests for the same and that until such documents were produced a final determination on the coverage could not be made.

24.     The Plaintiff is at a loss to understand how both the above statements can be true at the same time. Plaintiff reiterates that it made a timely and complete claim and cooperated in every aspect of same. However, contrary to the Defendant's representations to the Plaintiff, the Defendant has improperly adjusted the Plaintiff's claim, and the Plaintiff has therefore not received the coverage it purchased.

25.     In addition to the damage and associated loss to the Insured Premises, the Plaintiff has experienced significant emotional distress due to the Defendant's handling of the claim. As mentioned above, the delay caused by the Defendant resulted in the Plaintiff having to incur several expenses. These payments caused the Plaintiff severe financial distress. As a result, the Plaintiff had to sell property to the Evangelical Covenant Church in consideration for payment of its debts. Therefore, in light of the above, the Defendant is liable to the following causes of action under Illinois Law.

26.     Plaintiff has substantially performed all conditions required by the insurance policy to be performed by him, requested of him, and/or not waived by the Defendant including, but not limited to, paying the premium for the insurance policy, giving prompt notice of the loss, submitting to two examinations under oath, cooperating in the investigation of the claim, and timely filing suit against the Defendant.

27.     As a result, it is the duty of the Defendant to honor the terms of the insurance contract and make such payments as may be required to protect the Plaintiff from any losses or damages incurred. Although requested to do so, the Defendant has failed and refused to pay the Plaintiff the entire amount of the loss that is owed to the Plaintiff. Instead, the Defendant has, time

and time again pushed the blame on the Plaintiff's by insisting that any delay was caused by the Plaintiff's failure to provide the requisite documentation. The Defendant has chosen to ignore the Plaintiff's email dated August 17, 2020 whereby the Plaintiff have categorically stated that it was unable to make an effective inventory of the BPP given the large number of rooms and the extensive damage incurred.

28.     The Plaintiff submits that failure to submit the above, should not bar the Defendant from paying the required amounts to indemnify the cost of repairs/restoration of the roof. The damage to the roof and the damage to the BPP give rise to two separate payments that are in no way related to each other. The Defendant is refusing to pay any amount to fix the damage to roof by arguing that proper documentation with regard to the BPP has not been provided and as such the claim cannot be resolved.

29.     Further inherent in all contracts is an implied covenant of good faith and fair dealing. The Defendants had a duty to act in good faith and fairly deal with the Plaintiff's in light of the provisions of the insurance contract that clearly covered the Weather-Related Event. In spite of the Plaintiff paying the necessary premiums, the Defendant has refused to compensate Plaintiff for all of the damages to the Insured Premises in direct and proximate breach of the Defendant's insurance policy.

30.     As a direct result of the foregoing acts, omissions, deception and breach committed by the Defendant, Plaintiff suffered and continues to suffer damage to the Insured Premises, a loss of use of the Insured Premises as well as continuous financial harm.

WHEREFORE, Plaintiff, prays for an order by this Honorable Court that requires the Defendant to pay the full value of the policy ($7,692,831) to the Plaintiff; with interest at the applicable rate according to law, attorneys' fees accrued in prosecution of the claim and the

statutory remedies, including penalties as specified in 215 ILCS 5/155 and any other relief this court deems fit and proper.

## COUNT II
## (RELIEF UNDER SEC. 155)

31.     The Plaintiff realleges paragraphs 1 through 30 of the Complaint as fully stated and pled herein.

32.     As of the time of the loss, the Defendant's internal claim handling policies, practices, and procedures included compliance with Part 919 of the Illinois Administrative Code and compliance with sections 154.5 and 154.6 of the Illinois Insurance Code.

33.     Section 154.5 states that it is an improper claims practice for any domestic, foreign or alien company transacting business in the State of Illinois to commit any of the acts contained in Section 154.6, if, such act is committed knowingly and in violation of the provisions of Illinois Insurance Code, or any rules promulgated thereunder, and the act has been committed with a frequency that indicates a persistent tendency to engage in that type of conduct.

34.     Section 154.6 of the Insurance Code provides examples of the kind of practice that constitutes an improper claims practice. Of the examples provided, the ones that apply to the Defendant are the following:

a.   *Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue;*

b.   *   *   *

c.   *Failing to adopt and implement reasonable standards for the prompt investigations and settlement of claims arising under its policies;*

d.   *Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;*

e.  *Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;*

f.  *   *   *

g.  *   *   *

h.  *Refusing to pay claims without conducting a reasonable investigation based on all available information;*

i.  *Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;*

j.  *   *   *

k.  *   *   *

l.  *   *   *

m.  *Delaying the investigation or payment of claims by requiring an insured, a claimant, or the physicians of either to submit a preliminary claim report and then requiring subsequent submission of formal proof of loss forms, resulting in the duplication of verification;*

n.  *   *   *

o.  *   *   *

p.  *   *   *

q.  *   *   *

r.  *Engaging in any other acts which are in substance equivalent to any of the foregoing.*

35.     In light of the above, the Plaintiff submits that the Defendant is in violation of section 154.6 of the Illinois Insurance Code, because the Defendant has;

a.  failed to pay all the amounts due under the insurance policy within 40 days of the loss, which constitutes an unreasonable delay in the resolution of the claim as a matter of law, and violates the regulations promulgated by

10

the Illinois Director    of Insurance under section    919.80    (d)(7)(A)    of the Illinois Administrative Code;

b. failed to acknowledge with reasonable promptness pertinent communications regarding the claim, which violates the regulations promulgated by the Illinois Director of Insurance within Section 919.40 of the Illinois Administrative Code;

c. not attempted in good faith to effectuate a prompt, fair, and equitable settlement of a claim in which liability was reasonably clear, in violation of sec.154.6 of the Illinois Insurance Code and the regulations promulgated by the Director of Insurance under sec.919.50 of the Illinois Administrative Code;

d. failed to pay the covered loss to the Insured Premises without conducting a full, fair, and objective investigation based on all available facts and circumstances, in violation of internal claims polices, practices, and procedures and in violation of section 154.6 of the Illinois Insurance Code.

36.    The abovementioned actions amount to vexatious and unreasonable conduct by the Defendant. As such, the Plaintiff is entitled to an award of taxable costs under section 155 of the Illinois Insurance Code, which states that when an insurance company engages in vexatious and unreasonable conduct, the court can, at its discretion, allow reasonable attorney fees, certain other costs, and an amount not exceeding any one of the following:

*"(a)60% of the amount which the court or jury finds such party is entitled to recover against such company;*

*(b) $60,000;*

*(c) the excess of the amount which the court or the jury finds such party is entitled to recover over the amount (if any) which the company offers to pay in settlement of the claim prior to the action."*

WHEREFRORE, the Plaintiff, requests that the Court enter judgment in its favor and against Defendant, for cost of the suit, attorney's fees and other taxable costs under section 155 of the Illinois Insurance Code, as well as any other penalties and costs this Court deems fair and just.

## COUNT III
## (BREACH OF FIDUCIARY DUTY)

37.     The Plaintiff realleges paragraphs 1 through 38 of the Complaint the Complaint as fully stated and pled herein.

38.     The Plaintiff submits that the Defendant's owed a fiduciary duty to the Plaintiff, to fairly and expeditiously process the claim arising out of the Weather-Related Event. The Plaintiff in turn placed its trust in Defendant given its purported expertise, superiority and dominance over the insurance policy. Defendant's actions in assuring Plaintiff that its claim was being properly taken care of provided Plaintiff with a false sense of security as it believed that Defendant was acting in its best interests and the best interests of the Insured Premises.

39.     The Defendant's breached its fiduciary duty to the Plaintiff by refusing to settle its valid damage claim arising out of the covered Weather – Related Event. Defendant further unduly influenced Plaintiff by repeatedly assuring it that its actions were proper and that the Plaintiff would be taken care of in all respects. As a direct and proximate result of the Defendant's breach of its fiduciary duty to Plaintiff, the latter has suffered and continues to suffer damage to the Insured Premises and other financial harm.

WHEREFORE, in alight of the above allegations, Plaintiff, prays for an order by this Honorable Court granting such equitable remedy as is applicable; attorneys' fees accrued in prosecution of the claim and the statutory remedies, including penalties as specified in 215 ILCS 5/155, and any other relief this court deems fit and proper.

### *Waiver and Estoppel*

Defendant has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any Reservation of Rights or denial letters properly sent by the Defendant to Plaintiff.

NEW ZION CHRISTIAN FELLOWSHIP, Plaintiff

By */s/ Benjamin P. Barmore*

        Benjamin P. Barmore
        Texas Bar No. 24073076
        Zerbe, Miller, Fingeret, Frank & Jadav, P.C.
        3009 Post Oak Blvd., Suite 1700
        Houston, Texas 77056
        Telephone: (713) 350-3529
        Facsimile: (713) 350-3607
        bbarmore@zmflaw.com


        Kenneth C. Apicella
        Drost, Gilbert, Andrew & Apicella, LLC
        4811 Emerson Avenue, Suite 110
        Palatine, Illinois 60067
        Phone:   (847) 934-6000
        Fax:     (847) 934-6040
        kca@dgaalaw.com
        Plaintiff's Local Counsel for Service
        under LR 83.15


### JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

*/s/Benjamin P Barmore*
Benjamin P. Barmore